UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JASON DANIEL JACKSON,

      Petitioner,

v.                                     CASE NO. 5:13-cv-389-Oc-23PRL

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____/

## ORDER

    Asserting seven grounds for relief,[1] Jason Daniel Jackson ("Jackson") petitions (Doc. 1) for the writ of habeas corpus under 28 U.S.C. § 2254. Respondents oppose (Doc. 10) the petition. Jackson replies (Doc. 12), supplements the reply (Docs. 15, 17), and moves for summary judgment (Doc. 19).

### I. PROCEDURAL HISTORY

    The State of Florida's second amended information charges Jackson with solicitation to commit first degree murder and conspiracy to commit murder. (App. A at 114; App. B at 132) A jury found Jackson guilty as charged. (App. A at 142-43)

---

[1] Although Jackson raises seven grounds for relief in the petition, he labels some of his grounds as sub-claims. This order addresses each sub-claim as a separate ground.

The trial court sentenced Jackson to consecutive thirty-year terms of imprisonment.  (App. A at 165–69)  Jackson appealed, and Florida's Fifth District Court of Appeal ("Fifth DCA") affirmed.  (App. E)

Jackson petitioned the Fifth DCA (App. G, H) for the writ of habeas corpus. The Fifth DCA summarily denied (App K) the petition.

Jackson moved (App. L at 286–328) for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure.  After Jackson withdrew some claims, the state court conducted an evidentiary hearing on the remaining claims.  (App. L at 485–95)  The state court denied relief (App. L at 485–95) after the hearing, and Jackson appealed.  The Fifth DCA affirmed *per curiam* (App. Q).  Jackson moved in the Supreme Court of Florida for the writ of certiorari.  The Supreme Court of Florida construed the motion as a petition for the writ of mandamus and denied (App. V) the petition.

Jackson moved (App. W) to correct an illegal sentence under Rule 3.800(a), Florida Rules of Criminal Procedure.  The state court denied (App. X) the motion, and Jackson appealed.  The Fifth DCA affirmed *per curiam* (App. Y).

## II. FACTS ADUCED AT TRIAL

Edwin Seals ("Seals") testified that while Jackson and he were detained in the Lake County Jail, Jackson approached Seals about killing Jackson's wife, daughter, step-daughter, and step-son.  (App. B at 47–50)  Jackson, who was incarcerated and charged with sexually molesting his daughter and step-daughter, told Seals that he

wanted them killed so they could not testify against him.  (App. B. at 50)  Seals

notified a Clermont, Florida police detective about Jackson's statements.  (App. B

at 50–51)  Detectives from the Lake County Sheriff's Department met with Seals and

arranged for Seals speak with Jackson in a monitored cell to record their

conversation.  (App. B at 51)  Seals testified that Jackson confirmed during the

recorded conversation that Jackson wanted Seals to kill the four victims.  (App. B

at 52)  Before the monitored meeting, Jackson provided Seals with pictures of the

victims, diagrams of the victims' home, and instructions on how to enter the home.

(App. B at 52–53)

Seals said that Robert Jackson, Jackson's father (who along with Jackson's

mother, Versie Jackson, were Jackson's co-defendants) told Seals by telephone that

Robert wanted Seals to use a .9 millimeter or a .44 firearm to kill the victims with the

exception of his biological granddaughter.  (App. B at 54)  Seals testified that when

he was released from jail he was supposed to meet Jackson's parents to obtain $4,000

to $5,000 to kill the victims.  (App. B at 56–57)  Accompanied by an undercover

officer, Seals met with Versie at a motel, she gave Seals $100, and she told Seals that

she wanted the victims killed.  (App. B at 57)

Versie testified that she heard Robert and Jackson discussing a plan to take care

of the witnesses.  (App. B at 71–72)  Versie said that she was told to expect a call after

which Seals called their home and arranged to meet Robert and her at a motel.

- 3 -

(App. B at 73–75)  Robert withdrew money from the bank, drove Versie to the motel, and directed Versie to give Seals the money, which Versie did.  (App. B at 74–76, 80)

James Simpson, Jr. ("Simpson"), who was also incarcerated with Jackson, testified that Jackson asked him if he knew anyone who could eliminate someone. (App. B at 65–66)  According to Simpson, Jackson also asked if Simpson would be willing to kill someone when he bonded out of jail.  (App. B at 66)

Christopher Huskey ("Detective Huskey"), a detective with the Lake County Sheriff's Department, investigates matters at the jail.  Detective Huskey testified that he spoke with Seals after being contacted by a law enforcement officer regarding Jackson's statements to Seals.  (App. B at 25–26)  Detective Huskey spoke with Daniel Conlee ("Detective Conlee"), also a Lake County Sheriff's detective, regarding the information Detective Huskey received from Seals.  (App. B at 27–28, 32)  Subsequently, Detective Huskey installed a recording device in a cell in which Jackson and Seals were placed.  (App. B at 28)

Detective Conlee testified that a Clermont police detective contacted him about information he received from Seals.  (App. B at 33)  Detective Conlee introduced the Clermont detective to Detective Huskey to investigate the matter, but two days later Detective Conlee was assigned to the case.  (App. B at 34)  Detective Conlee met with Seals and Seals gave him the diagrams and photographs that Jackson had given Seals.  (App. B at 35)  Detective Conlee said that, after his meeting with Seals, he and Detective Huskey arranged for Seals and Jackson to be placed in a monitored cell.

(App. B at 35–36)  After Detective Conlee learned that Jackson was receiving outside

help, he arranged for Seals to get out of jail to meet with those individuals.  (App. B

at 36)  Detective Conlee monitored the meeting between Seals and Versie.  (App. B

at 37–38)

Detective Conlee spoke to Jackson after Versie and Robert were arrested.

(App. B at 38–39)  Jackson denied giving Seals the pictures and diagrams and told

Detective Conlee that the pictures had been stolen by Seals.  (App. B at 39)

### III. LEGAL STANDARDS

*A.    Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Under the AEDPA, federal habeas relief may not be granted with respect to a

claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses

only the holdings of the Supreme Court of the United States "as of the time of the

relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court

decisions; the 'contrary to' and 'unreasonable application' clauses articulate

independent considerations a federal court must consider." *Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."

Finally, under Section 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue by a state court, however, is presumed correct, and the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

**B.    *Standard for Ineffective Assistance of Counsel***

*Strickland v. Washington*, 466 U.S. 668 (1984), establishes that a convicted person is entitled to relief for ineffective assistance of counsel:  (1) if counsel's

performance "fell below an objective standard of reasonableness" and (2) if the

deficient performance prejudiced the defense.[2] *Strickland*, 466 U.S. at 687–88.

Counsel's conduct presumptively falls within the wide range of reasonable

professional assistance. *Strickland*, 466 U.S. at 689–90. "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct

on the facts of the particular case, viewed as of the time of counsel's conduct."

*Strickland*, 466 U.S. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit, the test for ineffective assistance of

counsel:

> has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.
> We ask only whether some reasonable lawyer at the trial could
> have acted, in the circumstances, as defense counsel acted at trial.
> Courts also should at the start presume effectiveness and should
> always avoid second guessing with the benefit of hindsight.
> *Strickland* encourages reviewing courts to allow lawyers broad
> discretion to represent their clients by pursuing their own strategy.
> We are not interested in grading lawyers' performances; we are
> interested in whether the adversarial process at trial, in fact,
> worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted).

Under those rules and presumptions, "the cases in which habeas petitioners can

---

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

A defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). *Strickland* guides the analysis of a claim of ineffective assistance of appellate counsel. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). "[T]he only question under the prejudice prong of the *Strickland* test is whether there was a reasonable probability that the appellate court, [had appellate counsel not been deficient,] . . . would have granted [the petitioner] a new trial." *Ferrell v. Hall*, 640 F.3d 1199, 1236 (11th Cir. 2011) (quoting *Clark v. Crosby,* 335 F.3d 1303, 1312 n.9 (11th Cir. 2003)).

## IV. ANALYSIS

### A.   Ground One

Jackson contends that appellate counsel rendered ineffective assistance by failing to assert that the trial court committed fundamental error by improperly instructing the jury so as to constructively amend the second amended information.[3] In support of this ground, Jackson argues that the trial court erred by instructing the jury that to convict Jackson of conspiracy to commit murder, the jury must find

---

[3] Jackson does not specify that he is raising ground one as a claim of ineffective assistance of appellate counsel. *See* Doc. 1 at 6. However, he raised ground one in the state court as a claim of ineffective assistance of appellate counsel. *See* App. H. To the extent that Jackson attempts to raise a claim of trial court error, the claim is procedurally barred from review by this court because it was not exhausted in the state court.

beyond a reasonable doubt that Jackson conspired with Robert and Versie to cause commission of the murder by either them "or some other person." (Doc. 1 at 6) According to Jackson, the "or some other person" language added an element to the offense and amended the charging instrument. (Doc. 1 at 6)

Jackson raised this ground in his state habeas petition. The Fifth DCA summarily denied relief.

A Fifth Amendment violation occurs when an indictment is constructively "amended so that a defendant was convicted of charges not included in the indictment." *United States v. Ward*, 486 F.3d 1212, 1226 (11th Cir. 2007). An indictment is "constructively amended 'when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'" *United States v. Ward*, 486 F.3d 1212, 1226 (11th Cir. 2007) (quoting *United States v. Narog,* 372 F.3d 1243, 1247 (11th Cir. 2004)).

The second amended information charges that, "JASON DANIEL JACKSON . . . did unlawfully agree, conspire, combine or confederate with another person or persons to wit:  father, Robert Jackson and mother, Versie Jones Jackson, to commit the offense of Murder in the First Degree. . . ." (App. A at 114)  Section 777.04(3), Florida Statutes, provides that a person who "agrees, conspires, combines, or confederates with another person or persons to commit any offense commits the offense of criminal conspiracy. . . ." Fla. Stat. § 777.04(3) (2006).  The trial court

instructed the jury that the State had to prove that Jackson "agreed, conspired,

combined, or confederated with Robert Jackson and Versie Jones Jackson to cause

murder to be committed either by them, or one of them, or by some other person."

(App. A at 120)

The trial court's instruction effected no constructive amendment of the

indictment. The essential elements of the offense were that Jackson (1) conspired

with Robert and Versie (2) to commit murder. The jury was instructed that the State

must prove these elements, which were charged in the second amended information.

Who Jackson and Robert and Versie solicited to commit the murders was not an

element of the offense that the prosecution must establish beyond a reasonable doubt.

By including the "or by some other person" language in the instruction, the trial

court did not broaden the possible bases for conviction beyond what was contained in

the second amended information. In other words, the basis for Jackson's conviction

both in the charging instrument and in the jury instruction was that Jackson

conspired with his parents to commit murder.

Appellate counsel did not render deficient performance by failing to raise this

non-meritorious issue. Moreover, no reasonable probability exists that Jackson

would have received a new trial had appellate counsel raised the issue.

Consequently, the state court's denial of ground one is not contrary to, or an

unreasonable application of, *Strickland*. Accordingly, ground one is denied under

28 U.S.C. Section 2254(d).

- 10 -

**B.      Ground Two**

Jackson asserts that appellate counsel rendered ineffective assistance by failing

to argue that the trial court erred by denying his motion in limine and objections to

the admission of evidence regarding his pending case for sexual molestation.

Jackson raised this ground in his state habeas petition.  The Fifth DCA

summarily denied relief.

Jackson has not established that the state court's denial of this ground is

contrary to, or an unreasonable application of, *Strickland*.  Florida appellate courts

review "'evidentiary rulings for [an] abuse of discretion'" recognizing the limitation

that "[a] judge's discretion is limited by the rules of evidence and by the principles of

stare decisis." *Smith v. State*, 170 So. 3d 745, 757 (Fla. 2015) (quoting *Gregory v. State,*

118 So. 3d 770, 780 (Fla. 2013)).  In Florida, "evidence of uncharged crimes which

are inseparable from the crime charged, or evidence which is inextricably intertwined

with the crime charged, is admissible under section 90.402 because 'it is a relevant

and inseparable part of the act which is in issue. . . . [I]t is necessary to admit the

evidence to adequately describe the deed." *Griffin v. State*, 639 So. 2d 966, 968 (Fla.

1994) (quoting Charles W. Ehrhardt, *Florida Evidence* § 404.17 (1993 ed.)).

The trial court determined that evidence Jackson was in jail on charges of

sexually molesting his daughter and step-daughter was inextricably intertwined

with this case because it was relevant to Jackson's motive and intent to have the

victims' murdered.  (App. A at 241–42)  The circumstances surrounding Jackson's

- 11 -

solicitation of Seals and conspiracy with his parents to commit the murders provided context for the offenses and explained Jackson's rationale for committing the offenses.  Therefore, the trial court properly admitted the evidence under Florida law. No reasonable probability exists that the appellate court would have found an abuse of discretion by the trial court in admitting the evidence, even if counsel had raised this issue.  In other words, no prejudice resulted.  Accordingly, ground two is denied under 28 U.S.C. Section 2254(d).

**C.    *Ground Three***

Jackson asserts that trial counsel rendered ineffective assistance by failing to move to suppress both Jackson's statements and the pictures and diagrams given to Seals.  In support of this ground, Jackson argues that he invoked his Fifth Amendment rights when he was arrested on the sexual molestation charges and Seals, acting as a government agent, illegally interrogated him during the recorded meeting.  Jackson claims that the evidence resulting from the interrogation is subject to suppression as "fruit of the poisonous tree."  *See Wong Sun v. United States*, 471 U.S. 471, 488 (1963).

Jackson raised this ground in his Rule 3.850 motion.  The state court conducted an evidentiary hearing on the claim and denied relief under *Strickland*. (App. L at 486–88)  The state court reasoned that Seals contacted law enforcement after Jackson solicited him to kill the victims and, therefore, necessarily was not a government agent at the time of the solicitation.  (App. L at 487)  The state court

- 12 -

concluded that suppression of the evidence was not warranted and that no prejudice

resulted from counsel's failure to move to suppress the evidence.  (App. L at 487)

> The Sixth Amendment right [to counsel] . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

*Texas v. Cobb*, 532 U.S. 162, 167-68 (2001) (quoting *McNeil v. Wisconsin*, 501 U.S. 171,

175 (1991)).  "[A] defendant's statements regarding offenses for which he had not

been charged [are] admissible notwithstanding the attachment of his Sixth

Amendment right to counsel on other charged offenses."  532 U.S. 162 (citing

*McNeil*, 501 U.S. at 176).  "[A]n undercover law enforcement officer posing as a

fellow inmate need not give *Miranda* warnings to an incarcerated suspect before

asking questions that may elicit an incriminating response."  *Illinois v. Perkins*, 496

U.S. 292, 300 (1990).  Therefore, the admission of a statement by or other evidence

from an inmate to an unknown government agent does not result in a constitutional

violation.  *Perkins* at 300; *see also Voorhees v. State*, 699 So. 2d 602, 611 (Fla. 1997)

(citing *Perkins* for the proposition that "*Miranda* concerns are not implicated when an

incarcerated person speaks freely to someone whom he believes to be a fellow

inmate.").

    In the instant case, Jackson had not been charged with solicitation to commit

murder or conspiracy to commit murder when he spoke to Seals before and during

the recorded meeting.  Thus, Jackson's statements and the pictures and diagrams were not subject to suppression under the Sixth Amendment.  Furthermore, Jackson approached Seals, made inculpatory statements, and provided Seals with the pictures and diagrams before law enforcement became involved.  *See* App. L at 433–34 (Detective Huskey testifying that Seals approached law enforcement and that, although he was not certain, he believed Seals gave him the photographs and diagrams at their initial or second meeting); App. L at 441–42, 626–30 (Detective Conlee explaining the course of the investigation).  Therefore, the state court's conclusion that Seals was not acting as a government agent was not objectively unreasonable.  Moreover, even if Seals had acted as a government agent during the monitored meeting, Jackson's statements to Seals in light of *Perkins* were not subject to suppression.  *See State v. Russell,* 814 So. 2d 483, 487-88 (Fla. DCA 2002) (concluding that recorded statements by the defendant to the victim acting at the behest of law enforcement were not subject to suppression under the Fifth Amendment because "*Miranda* warnings are not required unless a suspect is in custody and facing interrogation by the police. . . .  It is insufficient that a suspect is already in prison being held on other charges, to establish custodial interrogation in a different case.").  Therefore, Jackson has not demonstrated that a reasonable probability exists that the evidence would have been suppressed or that the outcome of the trial would have been different had counsel moved to suppress the evidence.  Accordingly, ground three is denied under 28 U.S.C. Section 2254(d).

### D.     Ground Four

Jackson asserts that trial counsel rendered ineffective assistance by failing to move to suppress his statements to Detectives Watkins and Conlee.  In support of this ground, Jackson contends that the detectives questioned him about the diagrams received from Seals without counsel being present.  (Doc. 1 at 12)

Jackson raised this ground in his Rule 3.850 motion.  The state court denied relief under *Strickland*.  (App. L at 488)

"Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be re-approached regarding *any* offense unless counsel is present."  *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991) (emphasis in original) (citing *Arizona v. Roberson,* 486 U.S. 675 (1988)).  Therefore, arguably any statements made to Detectives Watkins and Conlee were subject to suppression because Jackson had presumably invoked his right to counsel when arrested for sexual molestation.  Nevertheless, prejudice did not result from counsel's failure to move to suppress his statement to Detectives Watkins and Conlee.  Detective Conlee testified that Jackson told him that Jackson did not know why Seals would have been at his wife's home, denied knowing anything about the diagrams of the victims' home, and said Seals had stolen the pictures of the victims.  (App. B at 39)  Jackson stated nothing inculpatory.  Consequently, no reasonable probability exists that the outcome of the trial would differ even if Jackson's statements were suppressed.  Accordingly, ground four is denied under 28 U.S.C. Section 2254(d).

### E.      Ground Five

Jackson asserts that trial counsel rendered ineffective assistance by failing to object to his sentence.  Jackson argues that his sentence is disproportionate to his parents' sentences and that the sentence is vindictive and retaliatory because he exercised his right to a trial.

Jackson raised this ground in his Rule 3.850 motion.  The state court denied relief under *Strickland*.  (App. L at 489)  The state court reasoned that under Florida law, the trial court could sentence Jackson to the maximum sentence.  (App. L at 489)  The state court further noted that claims of sentencing disparity are without merit under Florida law when the co-defendants' lesser sentence was the result of a plea agreement or prosecutorial discretion.  (App. L at 489) (quoting *Kight v. State*, 784 So. 2d 396, 401 (Fla. 2001)).  The state court concluded that Jackson's sentence was both legal and within the trial court's discretion and that no prejudice resulted from counsel's failure to object to the sentence.  (App. L at 489)

The record reflects that Versie and Robert pleaded guilty under their plea agreements and were sentenced to five and eight years, respectively.  The Supreme Court of Florida has rejected claims of disparate sentences "in instances where the codefendant's lesser sentence was the result of a plea agreement or prosecutorial discretion. . . ."  *Kight*, 784 So. 2d at 401.  Furthermore, Jackson offers no evidence that his sentence was vindictively imposed or greater than permitted by statute.  As a result, no reasonable probability exists that Jackson's sentence would have been

reduced, even if counsel had objected.  Accordingly, ground five is denied under

28 U.S.C. Section 2254(d).

### E.   *Grounds Six and Seven*

In ground six, Jackson maintains that the state courts denied his right to due

process.  In support he complains that the post-conviction court delayed ruling on his

motion after the evidentiary hearing and did not review the transcript of the hearing,

that the state appellate court *per curiam* affirmed, and that the Supreme Court of

Florida improperly treated his petition for writ of certiorari as a petition for writ of

mandamus.  (Doc. 1 at 18–19)  Similarly, in ground seven Jackson asserts that the

state courts failed to adhere to state rules because they summarily denied his

Rule 3.800(a) motion without discussion.  (Doc. 1 at 23)

The Eleventh Circuit Court of Appeals "has repeatedly held defects in state

collateral proceedings do not provide a basis for habeas relief."  *Carroll v. Sec', Dep't of

Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009).  Therefore, Jackson's claims that his

post-conviction proceedings were inadequate because of defects in the proceedings

are not cognizable habeas claims.  *See, e.g., Spradley v. Dugger,* 825 F.2d 1566, 1567

(11th Cir. 1987) (holding that the state trial court's alleged errors in the Rule 3.850

proceedings did not undermine the validity of the petitioner's conviction; therefore,

the claim went to issues unrelated to the cause of the petitioner's detention and did

not state a basis for habeas relief).  Also, the state courts addressed Jackson's post-

conviction motions in accord with state law, and no evidence appears that Jackson was denied due process.  Accordingly, grounds six and seven are denied.

The petition for writ of habeas corpus (Doc. 1) is **DENIED**, and Jackson's motion for summary judgment (Doc. 19) is **DENIED**.  The action is **DISMISSED WITH PREJUDICE**.  The clerk is directed to enter judgment accordingly and to close the case.

## V. CERTIFICATE OF APPEALABILITY

An application for a certificate of appealability should be granted only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).  When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Lamarca*, 568 F.3d at 934.  However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

- 18 -

Jackson has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Jackson cannot show that jurists of reason would find this court's procedural rulings debatable.  Jackson fails to make a substantial showing of the denial of a constitutional right.  Issuance of a certificate of appealability is **DENIED**.

ORDERED in Tampa, Florida, on March 8, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE