UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION


JASON DANIEL JACKSON,

      Petitioner,

v.                                  CASE NO. 5:13-cv-389-Oc-23PRL

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____/

## ORDER

      Asserting nine grounds for relief,[1] Jason Daniel Jackson petitions (Doc. 1) for the writ of habeas corpus under 28 U.S.C. § 2254. Respondents oppose (Docs. 10, 27) the petition. Jackson replies (Doc. 12), supplements the reply (Docs. 15, 17), supplements the habeas petition (Docs. 20, 21), moves for summary judgment (Doc. 19), and moves to stay the action (Doc. 29). Respondents oppose Jackson's supplements to the petition (Doc. 27).

---

[1] Although Jackson raises seven grounds for relief in the petition, he labels some of his grounds as sub-claims. This order addresses each sub-claim as a separate ground. Jackson also raises two additional grounds in his construed supplements to the petition, which the order addresses separately. (Docs. 20, 21)

# I. PROCEDURAL HISTORY

The State of Florida's second amended information charges Jackson with solicitation to commit first degree murder and conspiracy to commit murder. (App. A at 114; App. B at 132)  A jury found Jackson guilty as charged.  (App. A at 142–43)

The trial court sentenced Jackson to consecutive thirty-year terms of imprisonment.  (App. A at 165–69)  Jackson appealed, and Florida's Fifth District Court of Appeal ("Fifth DCA") affirmed.  (App. E)

Jackson petitioned the Fifth DCA (App. G, H) for the writ of habeas corpus. The Fifth DCA summarily denied (App. K) the petition.

Jackson moved (App. L at 286–328) for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure.  After Jackson withdrew some claims, the state court conducted an evidentiary hearing on the remaining claims. (App. L at 485–95)  The state court denied relief (App. L at 485–95) after the hearing, and Jackson appealed.  The Fifth DCA affirmed *per curiam* (App. Q).  Jackson moved in the Supreme Court of Florida for the writ of certiorari.  The Supreme Court of Florida construed the motion as a petition for the writ of mandamus and denied (App. V) the petition.

Jackson moved (App. W) to correct an illegal sentence under Rule 3.800(a), Florida Rules of Criminal Procedure.  The state court denied (App. X) the motion, and Jackson appealed.  The Fifth DCA affirmed *per curiam* (App. Y).

## II. Facts Adduced At Trial

Edwin Seals testified that while Jackson and he were detained in the Lake County Jail, Jackson approached Seals about killing Jackson's wife, daughter, step-daughter, and step-son. (App. B at 47–50) Jackson, who was incarcerated and charged with sexually molesting his daughter and step-daughter, told Seals that he wanted them killed so they could not testify against him. (App. B. at 50) Seals notified a Clermont police detective about Jackson's statements. (App. B at 50–51) Detectives from the Lake County Sheriff's Department met with Seals and arranged for Seals to speak with Jackson in a monitored cell to record their conversation. (App. B at 51) Seals testified that Jackson confirmed during the recorded conversation that Jackson wanted Seals to kill the four victims. (App. B at 52) Before the monitored meeting, Jackson provided Seals with pictures of the victims, diagrams of the victims' home, and instructions on how to enter the home. (App. B at 52–53)

Seals said that Robert Jackson, Jackson's father (who along with Jackson's mother, Versie Jackson, were Jackson's co-defendants) told Seals by telephone that Robert wanted Seals to use a .9 millimeter or a .44 firearm to kill the victims (excepting only his biological granddaughter). (App. B at 54) Seals testified that when he was released from jail he was supposed to meet Jackson's parents to obtain $4,000 to $5,000 to kill the victims. (App. B at 56–57) Accompanied by an

undercover officer, Seals met with Versie at a motel, she gave Seals $100, and she told Seals that she wanted the victims killed.  (App. B at 57)

Versie testified that she heard Robert and Jackson discussing a plan to eliminate the witnesses.  (App. B at 71–72)  Versie said that she was told to expect a call.  Later Seals called their home and arranged to meet Robert and Versie at a motel.  (App. B at 73–75)  Robert withdrew money from the bank, drove Versie to the motel, and directed Versie to give Seals the money, which Versie did.  (App. B at 74–76, 80)

James Simpson, Jr. ("Simpson"), who was also incarcerated with Jackson, testified that Jackson asked him if he knew anyone who could eliminate someone. (App. B at 65–66)  According to Simpson, Jackson asked also if Simpson, when he bonded out of jail, would be willing to kill someone.  (App. B at 66)

Christopher Huskey, a detective with the Lake County Sheriff's Department, investigates at the jail.  Detective Huskey testified that he spoke with Seals after being contacted by a law enforcement officer regarding Jackson's statements to Seals. (App. B at 25–26)  Detective Huskey spoke with Daniel Conlee, also a Lake County Sheriff's detective, regarding the information Detective Huskey received from Seals. (App. B at 27–28, 32)  Subsequently, Detective Huskey installed a recording device in a cell in which Jackson and Seals were placed.  (App. B at 28)

Detective Conlee testified that a Clermont police detective contacted him about information he received from Seals.  (App. B at 33)  Detective Conlee

introduced the Clermont detective to Detective Huskey to investigate the matter, but two days later Detective Conlee was assigned to the case. (App. B at 34) Detective Conlee met with Seals, who gave Conlee the diagrams and photographs that Jackson had given Seals. (App. B at 35) Detective Conlee said that, after his meeting with Seals, Detectives Conlee and Huskey arranged for Seals and Jackson's placement in a monitored cell. (App. B at 35–36) After learning that Jackson was receiving outside help, Detective Conlee arranged for Seals to leave jail to meet with Jackson's parents, whom Detective Conlee suspected were helping Jackson. (App. B at 36) Detective Conlee monitored the meeting between Seals and Versie. (App. B at 37–38)

Detective Conlee spoke to Jackson after Versie and Robert were arrested. (App. B at 38–39) Jackson denied giving Seals the pictures and diagrams and told Detective Conlee that the pictures had been stolen by Seals. (App. B at 39)

### III. LEGAL STANDARDS

**A.      *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")***

The AEDPA prohibits federal habeas relief with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is available only if the state court's application was "objectively unreasonable."

Finally, under Section 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue by a state court, however, is presumed correct, and the habeas petitioner has the burden of rebutting the presumption of correctness by

clear and convincing evidence.  *See Parker*, 244 F.3d at 835–36; 28 U.S.C.

§ 2254(e)(1).

**B.      Standard for Ineffective Assistance of Counsel**

*Strickland v. Washington*, 466 U.S. 668 (1984), establishes that a convicted

person is entitled to relief for ineffective assistance of counsel (1) if counsel's

performance "fell below an objective standard of reasonableness" and (2) if the

deficient performance prejudiced the defense.[2]  *Strickland*, 466 U.S. at 687–88.

Counsel's conduct presumptively falls within the wide range of reasonable

professional assistance.  *Strickland*, 466 U.S. at 689–90.  "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct

on the facts of the particular case, viewed as of the time of counsel's conduct."

*Strickland*, 466 U.S. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit, the test for ineffective assistance of

counsel:

> has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.
> We ask only whether some reasonable lawyer at the trial could
> have acted, in the circumstances, as defense counsel acted at
> trial. Courts also should at the start presume effectiveness and
> should always avoid second guessing with the benefit of
> hindsight. *Strickland* encourages reviewing courts to allow
> lawyers broad discretion to represent their clients by pursuing
> their own strategy. We are not interested in grading lawyers'
> performances; we are interested in whether the adversarial
> process at trial, in fact, worked adequately.

---

[2] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), clarifies that the prejudice component of *Strickland* requires a criminal defendant to show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted).

Under those rules and presumptions, "the cases in which habeas petitioners can

properly prevail on the ground of ineffective assistance of counsel are few and far

between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

A defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*,

725 F.2d 1282, 1291 (11th Cir. 1984). *Strickland* guides the analysis of a claim of

ineffective assistance of appellate counsel. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th

Cir. 1991); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). "[T]he only

question under the prejudice prong of the *Strickland* test is whether there was a

reasonable probability that the appellate court, [had appellate counsel not been

deficient,] . . . would have granted [the petitioner] a new trial." *Ferrell v. Hall*,

640 F.3d 1199, 1236 (11th Cir. 2011) (quoting *Clark v. Crosby,* 335 F.3d 1303, 1312

n.9 (11th Cir. 2003)).

## IV. MOTION TO STAY

Jackson moves to stay the instant action to allow him to exhaust a new ground

in the state court. (Doc. 29) In support of the motion, Jackson notes that he has filed

in the state court a successive post-conviction motion based on newly discovered

evidence that shows entrapment. Specifically, Jackson contends that Danny Pierce

and Bruce Webber, inmates with whom Jackson is incarcerated and with whom he

was in jail along with Seals and Simpson, overheard Seals and Simpson express their

hatred for child molesters and plot to "get" Jackson. (*Id*. at 2)

*Rhines v. Weber*, 544 U.S. 269, 277–78 (2005), explains when a district court

should grant a motion to stay a mixed petition for writ of habeas corpus under

28 U.S.C. § 2254:

> [I]t likely would be an abuse of discretion for a district court
> to deny a stay and to dismiss a mixed petition if the petitioner
> had good cause for his failure to exhaust, his unexhausted
> claims are potentially meritorious, and there is no indication
> that the petitioner engaged in intentionally dilatory litigation
> tactics. In such circumstances, the district court should stay,
> rather than dismiss, the mixed petition.

Because Jackson's petition contains no ground based on entrapment, the

petition is not a mixed petition. Further, Jackson has not shown good cause for his

failure to exhaust this ground. If he was entrapped, Jackson knew at the time of trial

that he was entrapped even if he did not know that Pierce or Webber had purportedly

overheard Seals and Simpson plotting to "get" Jackson.

Most importantly, Jackson has not demonstrated that this ground is arguably

meritorious. From the evidence presented at trial, neither Seals nor Simpson was a

government agent when Jackson approached them to murder his family. An

entrapment defense, therefore, was unavailable. *See State v. Hunter*, 586 So. 2d 319,

322 (Fla. 1991) ("When a middleman, not a state agent, induces another person to

engage in a crime, entrapment is not an available defense."). Consequently, no basis

exists to stay this action under *Rhines*, and the motion to stay is denied.

# V. ANALYSIS

## *A.    Ground One*

Jackson contends that appellate counsel rendered ineffective assistance by failing to assert that the trial court committed fundamental error by improperly instructing the jury so as to constructively amend the second amended information.[3] In support of this ground, Jackson argues that the trial court erred by instructing the jury that to convict Jackson of conspiracy to commit murder the jury must find beyond a reasonable doubt that Jackson conspired with Robert and Versie to cause commission of the murder by either them "or some other person."  (Doc. 1 at 6) According to Jackson, the "or some other person" language added an element to the offense and amended the charging instrument.  (Doc. 1 at 6)

Jackson raised this ground in his state habeas petition.  The Fifth DCA summarily denied relief.

A Fifth Amendment violation occurs when an indictment is constructively "amended so that a defendant was convicted of charges not included in the indictment."  *United States v. Ward*, 486 F.3d 1212, 1226 (11th Cir. 2007).  An indictment is "constructively amended 'when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction

---

[3] Jackson does not specify that he is raising ground one as a claim of ineffective assistance of appellate counsel. *See* Doc. 1 at 6. However, he raised ground one in the state court as a claim of ineffective assistance of appellate counsel. *See* App. H. To the extent that Jackson attempts to raise a claim of trial court error, the claim is procedurally barred from review by this court because the claim was not exhausted in the state court.

beyond what is contained in the indictment.'"  *Ward*, 486 F.3d at 1226 (quoting

*United States v. Narog,* 372 F.3d 1243, 1247 (11th Cir. 2004)).

As *State v. Smith*, 240 So. 2d 807, 810–11 (Fla. 1970), instructs:

> In charging a conspiracy to commit murder in the first degree,
> it is unnecessary to allege the manner or means by which the
> death of the victim is to be effected, for the crime of conspiracy
> may be committed prior to the time that the manner or means
> of effecting the death is determined by the conspirators. In
> other words, two or more persons could unlawfully combine,
> conspire, agree, or confederate with each other to commit
> murder in the first degree (thereby committing the crime
> of conspiracy) with the understanding that the means of
> accomplishing the unlawful homicide would be determined
> at a later date.

The second amended information charges that, "JASON DANIEL

JACKSON . . . did unlawfully agree, conspire, combine or confederate with another

person or persons to wit: father, Robert Jackson and mother, Versie Jones Jackson, to

commit the offense of Murder in the First Degree. . . ."  (App. A at 114)  Section

777.04(3), Florida Statutes (2006), provides that a person who "agrees, conspires,

combines, or confederates with another person or persons to commit any offense

commits the offense of criminal conspiracy. . . ."  The trial court instructed the jury

that the State had to prove that Jackson "agreed, conspired, combined, or

confederated with Robert Jackson and Versie Jones Jackson to cause murder to be

committed either by them, or one of them, or by some other person."  (App. A

at 120)

The trial court's instruction effected no constructive amendment of the

information.  The essential elements of the offense were that Jackson (1) conspired

- 11 -

with Robert and Versie (2) to commit murder. The jury was instructed that the State must prove these elements, which were charged in the second amended information. Who Jackson, Robert, and Versie solicited to commit the murders, *i.e.,* the manner or the means, was not an element of the offense that had to be charged in the information. By including "or by some other person" in the jury instruction, the trial court did not broaden the possible bases for conviction beyond what was contained in the second amended information. In other words, the basis for Jackson's conviction both in the charging instrument and in the jury instruction was that Jackson conspired with his parents to commit murder.

Appellate counsel did not render deficient performance by failing to raise this non-meritorious issue that was not preserved for appeal. Moreover, no reasonable probability exists that Jackson would have received a new trial had appellate counsel raised the issue. Consequently, the state court's denial of ground one is not contrary to, or an unreasonable application of, *Strickland*. Accordingly, ground one is denied under 28 U.S.C. Section 2254(d).

**B.     *Ground Two***

Jackson asserts that appellate counsel rendered ineffective assistance by failing to argue that the trial court erred by denying his motion *in limine* and objections to the admission of evidence regarding his pending case for sexual molestation.

Jackson raised this ground in his state habeas petition. The Fifth DCA summarily denied relief.

Jackson has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. Florida appellate courts review "'evidentiary rulings for [an] abuse of discretion'" and recognize that "[a] judge's discretion is limited by the rules of evidence and by the principles of *stare decisis*." *Smith v. State*, 170 So. 3d 745, 757 (Fla. 2015) (quoting *Gregory v. State,* 118 So. 3d 770, 780 (Fla. 2013)). In Florida, "evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is admissible under section 90.402 because 'it is a relevant and inseparable part of the act which is in issue. . . . [I]t is necessary to admit the evidence to adequately describe the deed.'" *Griffin v. State*, 639 So. 2d 966, 968 (Fla. 1994) (quoting Charles W. Ehrhardt, *Florida Evidence* § 404.17 (1993 ed.)).

The trial court determined that evidence of Jackson's detention on charges of sexually molesting his daughter and step-daughter was inextricably intertwined with, and probative of, Jackson's motive and intent to have the victims' murdered, as charged in this action. (App. A at 241–42) The circumstances surrounding Jackson's solicitation of Seals and Jackson's conspiracy with his parents to commit the murders provided context for the offenses and explained Jackson's reason for committing the offenses. Therefore, the trial court properly admitted the evidence. No reasonable probability exists that the appellate court would have found an abuse of discretion by the trial court in admitting the evidence, even if counsel had raised this issue. In

other words, no prejudice resulted. Accordingly, ground two is denied under 28 U.S.C. Section 2254(d).

## C.    *Ground Three*

Jackson asserts that trial counsel rendered ineffective assistance by failing to move to suppress both Jackson's statements and the pictures and diagrams given to Seals. In support of this ground, Jackson argues that he invoked his Fifth Amendment rights when he was arrested on the sexual molestation charges and Seals, acting as a government agent, illegally interrogated him during the recorded meeting. Jackson claims that the evidence resulting from the interrogation is subject to suppression as "fruit of the poisonous tree." *See Wong Sun v. United States*, 471 U.S. 471, 488 (1963).

Jackson raised this ground in his Rule 3.850 motion. The state court conducted an evidentiary hearing on the claim and denied relief under *Strickland*. (App. L at 486–88) The state court reasoned that Seals contacted law enforcement after Jackson solicited him to kill the victims and, therefore, necessarily was not a government agent at the time of the solicitation. (App. L at 487) The state court concluded that suppression of the evidence was not warranted and that no prejudice resulted from counsel's failure to move to suppress the evidence. (App. L at 487)

> The Sixth Amendment right [to counsel] . . . is offense specific.
> It cannot be invoked once for all future prosecutions, for it does
> not attach until a prosecution is commenced, that is, at or after
> the initiation of adversary judicial criminal proceedings —
> whether by way of formal charge, preliminary hearing,
> indictment, information, or arraignment.

*Texas v. Cobb*, 532 U.S. 162, 167–68 (2001) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). "[A] defendant's statements regarding offenses for which he had not been charged [are] admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." 532 U.S. 162 (citing *McNeil*, 501 U.S. at 176). "[A]n undercover law enforcement officer posing as a fellow inmate need not give *Miranda* warnings to an incarcerated suspect before asking questions that may elicit an incriminating response." *Illinois v. Perkins*, 496 U.S. 292, 300 (1990). Therefore, the admission of either a statement by, or other evidence from, an inmate to an unknown government agent results in no constitutional violation. *Perkins*, 496 U.S. at 300; *see also Voorhees v. State*, 699 So. 2d 602, 611 (Fla. 1997) (citing *Perkins* for the proposition that "*Miranda* concerns are not implicated when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate.").

In the instant case, Jackson had not been charged with solicitation to commit murder or conspiracy to commit murder when he spoke to Seals before and during the recorded meeting. Thus, Jackson's statements and the pictures and diagrams were not subject to suppression under the Sixth Amendment. Furthermore, Jackson approached Seals, made inculpatory statements, and provided Seals with the pictures and diagrams — all before law enforcement became involved. *See* App. L at 433–34 (Detective Huskey testifying that Seals approached law enforcement and that, although he was not certain, Detective Huskey believed Seals gave him the

photographs and diagrams at their initial or second meeting); App. L at 441–42, 626–30 (Detective Conlee explaining the course of the investigation).  Therefore, the state court's conclusion that Seals was not acting as a government agent was not objectively unreasonable.  Moreover, even if Seals had acted as a government agent during the monitored meeting, Jackson's statements to Seals in light of *Perkins* were not subject to suppression.  *See State v. Russell,* 814 So. 2d 483, 487–88 (Fla. DCA 2002) (concluding that recorded statements by the defendant to the victim acting at the behest of law enforcement were not subject to suppression under the Fifth Amendment because "*Miranda* warnings are not required unless a suspect is in custody and facing interrogation by the police. . . .  It is insufficient that a suspect is already in prison being held on other charges, to establish custodial interrogation in a different case.").  Therefore, Jackson has not demonstrated that a reasonable probability exists that the evidence would have been suppressed or that the outcome of the trial would have been different had counsel moved to suppress the evidence.  Accordingly, ground three is denied under 28 U.S.C. Section 2254(d).

### D.    *Ground Four*

Jackson asserts that trial counsel rendered ineffective assistance by failing to move to suppress his statements to Detectives Watkins and Conlee.  In support of this ground, Jackson contends that the detectives questioned him about the diagrams received from Seals without counsel being present.  (Doc. 1 at 12)

Jackson raised this ground in his Rule 3.850 motion. The state court denied relief under *Strickland*. (App. L at 488)

"Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be re-approached regarding *any* offense unless counsel is present." *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991) (emphasis in original) (citing *Arizona v. Roberson*, 486 U.S. 675 (1988)). Therefore, arguably any statement to Detectives Watkins and Conlee was subject to suppression because Jackson had presumably invoked his right to counsel when arrested for sexual molestation. Nevertheless, prejudice did not result from counsel's failure to move to suppress Jackson's statement to Detectives Watkins and Conlee. Detective Conlee testified that Jackson told him that Jackson did not know why Seals would have been at his wife's home, denied knowing anything about the diagrams of the victims' home, and said Seals had stolen the pictures of the victims. (App. B at 39) Jackson stated nothing inculpatory. Consequently, no reasonable probability exists that the outcome of the trial would differ even if Jackson's statements were suppressed. Accordingly, ground four is denied under 28 U.S.C. Section 2254(d).

**E.    *Ground Five***

Jackson asserts that trial counsel rendered ineffective assistance by failing to object to Jackson's sentence. Jackson argues that his sentence is disproportionate to his parents' sentences and that the sentence is vindictive and retaliatory because he exercised his right to a trial.

Jackson raised this ground in his Rule 3.850 motion. The state court denied relief under *Strickland*. (App. L at 489) The state court reasoned that under Florida law, the trial court could sentence Jackson to the maximum sentence. (App. L at 489) The state court further noted that claims of sentencing disparity are without merit under Florida law when the co-defendants' lesser sentence was the result of a plea agreement or prosecutorial discretion. (App. L at 489) (quoting *Kight v. State*, 784 So. 2d 396, 401 (Fla. 2001)). The state court concluded that Jackson's sentence was both legal and within the trial court's discretion and that no prejudice resulted from counsel's failure to object to the sentence. (App. L at 489)

The record reflects that Versie and Robert pleaded guilty under their plea agreements and were sentenced to five and eight years, respectively. The Supreme Court of Florida has rejected claims of disparate sentences "in instances where the codefendant's lesser sentence was the result of a plea agreement or prosecutorial discretion. . . ." *Kight*, 784 So. 2d at 401. Furthermore, Jackson offers no evidence that his sentence was vindictively imposed or greater than permitted by statute. As a result, no reasonable probability exists that Jackson's sentence would have been reduced, even if counsel had objected. Accordingly, ground five is denied under 28 U.S.C. Section 2254(d).

**E.     *Grounds Six and Seven***

In ground six, Jackson maintains that the state courts denied his right to due process. In support he complains that the post-conviction court delayed ruling on his

motion after the evidentiary hearing and did not review the transcript of the hearing, that the state appellate court *per curiam* affirmed, and that the Supreme Court of Florida improperly treated his petition for a "writ of certiorari" as a petition for a writ of mandamus. (Doc. 1 at 18–19)  Similarly, in ground seven Jackson asserts that the state courts failed to adhere to state rules because they summarily denied his Rule 3.800(a) motion without discussion. (Doc. 1 at 23)

The Eleventh Circuit Court of Appeals "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." *Carroll v. Sec', Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009).  Therefore, Jackson's claims that his post-conviction proceedings were inadequate because of defects in the proceedings are not cognizable habeas claims. *See, e.g., Spradley v. Dugger,* 825 F.2d 1566, 1567 (11th Cir. 1987) (holding that the state trial court's alleged errors in the Rule 3.850 proceedings did not undermine the validity of the petitioner's conviction; therefore, the claim went to issues unrelated to the cause of the petitioner's detention and did not state a basis for habeas relief).  Also, the state courts addressed Jackson's post-conviction motions in accord with state law, and no evidence appears that Jackson was denied due process.  Accordingly, grounds six and seven are denied.

## F.    *Supplemental Grounds*

In his request for judicial notice (Doc. 20) and his supplement to the request for judicial notice (Doc. 21), which this order and the docket characterize as supplements to the petition, Jackson raises two additional grounds.  First, Jackson

asserts that appellate counsel rendered ineffective assistance by failing to argue that he could not be convicted of conspiracy to commit murder because Seals was a government agent. (Doc. 20 at 1–6) Jackson also contends that probable cause did not exist to charge him with solicitation to commit murder. (Doc. 21 at 1–5)

Jackson maintains that the ground raised in his request for judicial notice is not a new ground but instead supports ground one of the petition. (Docs. 20 at 4; 28 at 1–3) Review of the petition establishes, however, that Jackson did not assert a ground premised on appellate counsel's failure to argue that Jackson could not be convicted of conspiracy to commit murder because Seals was a government agent. (Doc. 1 at 6) Jackson further concedes that the ground raised in his supplement to the request for judicial notice was not previously raised in either this court or the state court. (Doc. 28 at 4) Consequently, these new grounds serve to amend the petition to add claims.

Claims asserted in an amendment to a habeas petition must be filed within the one-year limitation under 28 U.S.C. § 2244. *Farris v. United States*, 333 F. 3d 1211, 1215 (11th Cir. 2003), observes that Rule 15(c):

> dictates that an amendment only relates back to the original pleading and causes an otherwise untimely claim to be considered timely when, . . . "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

> to relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding. The untimely filed claim must have arisen from the "same set of facts" as the

> timely filed claim, not from separate conduct or a separate
> occurrence in "both time and type."

Similarly, "[a]n amended habeas petition, . . . does not relate back (and thereby

escape AEDPA's one-year time limit) when it asserts a new ground for relief

supported by facts that differ in both time and type from those the original pleading

set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

Jackson filed his request for judicial notice (Doc. 20) and his supplement to the

request for judicial notice (Doc. 21) on January 6, and February 26, 2016,

respectively, more than two years after the initiation of this action. The grounds

Jackson raises in these papers arise from conduct different from the conduct

supporting the grounds raised in the petition. Thus, these new grounds do not relate

back to the seven grounds raised by Jackson in his petition. The amendments to the

petition, therefore, are untimely.

Alternatively, even if the new grounds were timely, they are procedurally

barred from review. One procedural requirement in the AEDPA precludes a federal

court, absent an exceptional circumstance, from granting habeas relief unless the

petitioner has exhausted the relief available under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842–43 (1999); *Picard v. Connor*, 404 U.S. 270,

275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> unless it appears that–

<blockquote>
(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)    there is an absence of available State corrective process; or

(ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.
</blockquote>

28 U.S.C. § 2254(b)(1).

A federal court must dismiss a claim denied on an adequate and independent procedural ground under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)*, holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012). In addition, a federal court is precluded from considering a claim that is unexhausted but which would be barred if returned to state court. 501 U.S. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275–76) (internal quotation marks omitted); *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must

be substantially the same for [the federal claim] to be the substantial equivalent of the properly exhausted claim.").

Jackson never argued in state court that appellate counsel rendered ineffective assistance by failing to argue that no conspiracy occurred because Seals was a government agent. Also, Jackson did not contend in state court that there was no probable cause to charge him with solicitation to commit murder. Thus, these grounds were not exhausted in the state court and are procedurally barred from review by this court absent an exception to the procedural default bar.

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). The second exception, known as the "fundamental miscarriage of justice," occurs only in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Jackson has neither alleged nor shown cause or prejudice that would excuse any procedural default. Likewise, he has not shown the applicability of the actual innocence exception. A review of the record reveals that Jackson is unable to satisfy either of the exceptions to the procedural default bar. Accordingly, the two grounds raised in Jackson's request for judicial notice (Doc. 20) and supplement to the request for judicial notice (Doc. 21) are denied as untimely and procedurally barred.

Jackson's motion to stay (Doc. 29) is **DENIED**, the petition for writ of habeas corpus (Doc. 1) is **DENIED**, Jackson's motion for summary judgment (Doc. 19) is **DENIED**, and Jackson's supplements to the petition (Docs. 20, 21) are **DENIED**. The action is **DISMISSED WITH PREJUDICE**. The clerk is directed to enter judgment accordingly and to close the case.

## V. Certificate of Appealability

An application for a certificate of appealability should be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Jackson has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Jackson cannot show that jurists of reason would find this court's procedural rulings debatable. Jackson fails to make a substantial showing of the denial of a constitutional right. Issuance of a certificate of appealability is **DENIED**.

ORDERED in Tampa, Florida, on March 29, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE